**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | **CRIMINAL NO. 25-438** |
| STEPHEN D. CULLEN | : | |

**<u>GOVERNMENT'S SENTENCING MEMORANDUM</u>**

In 2019 and 2020, defendant Stephen Cullen, while employed as the financial controller of a consulting company, took advantage of a generous tuition reimbursement program offered by his employer. Instead of seeking reimbursement for the actual tuition cost to which he was entitled, he treated his employer's credit card account as his own personal wallet. Through deceit and manipulation, he charged the company's credit card more than twice the cost of his actual tuition. As a result of his embezzlement, he faces a guideline range of 10 to 16 months' imprisonment.   For these reasons and those set forth below, Cullen should receive a sentence within this guideline range.

I.      <u>BACKGROUND</u>

On September 26, 2025, Cullen was charged by information with one count of wire fraud, in violation of 18 U.S.C. § 1343. On October 28, 2025, pursuant to a written plea agreement, Cullen waived indictment and pled guilty to the information. He is scheduled to be sentenced by this Court on July 28, 2026.

II.    SENTENCING CALCULATION

    A.    Statutory Maximum Sentence

A violation of Title 18, United States Code, Section 1343 carries a maximum penalty of 20 years' imprisonment, 3 years of supervised release, a $250,000 fine, and a $100 special assessment.

    B.    Sentencing Guidelines Calculation

The Probation Office correctly calculated Cullen's advisory guideline range in the PSR as follows:

| | |
|---|---|
| Base Offense Level<br>§§ 2T1.1(a)(1), 2T4.1(G) | 15 |
| Abuse of position of trust/special skill<br>§ 3B1.3 | +2 |
| Zero-Point Offender<br>§ 4C1.1(a) | -2 |
| Acceptance of responsibility<br>§ 3E1.1(a) | -2 |
| Acceptance of responsibility<br>§ 3E1.1(b) | -1 |
| Total Offense Level | 12 |

Because Cullen's criminal history score is zero, he is in Criminal History Category I. His guideline sentencing range is 10 to 16 months' imprisonment (Zone C).[1]

III.    ANALYSIS

As discussed below, a thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the most appropriate sentence is one within the advisory guideline range. The Supreme Court has declared: "As a matter of administration

2

and to secure nationwide consistency, the Guidelines should be the starting point and the initial

benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 (2007).  Thus, the Sentencing

Guidelines remain an indispensable resource for asserting appropriate and uniform punishment

for federal criminal offenses.

This Court must also consider all of the sentencing considerations set forth in

Section 3553(a).  Those factors include:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed –

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the defendant; and

    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the kinds of sentences and the sentencing range established for –

    (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced; . . .

---

[1]  Pursuant to USSG § 5C1.1(d), the minimum term for a guideline range in Zone C may be satisfied by (i) a sentence of imprisonment or (ii) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention, provided that at least half of the minimum term (here, six months) is satisfied by imprisonment.

(5)     any pertinent policy statement . . . issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced;

(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.

Each of the § 3553(a) factors is discussed below:

A.     The nature and circumstances of the offense and the history and characteristics of the defendant

1.     The nature and circumstances of the offense

Cullen's fraudulent conduct was unquestionably serious and harmful to the victim company. In committing the offense, he used his accounting skills and his position as the controller of the company. He violated the trust of the company's management who relied upon him to properly manage and protect the company's finances. Instead, he took advantage of the company by manipulating the company's books and embezzling approximately $133,158.58, which was more than double the actual cost of the tuition. Then, when questioned, Cullen provided doctored invoices to further mislead the company.

2.     The history and characteristics of the defendant

Cullen is 46 years old.  He is married with one young child.  He accepted responsibility for this offense by readily offering to plead guilty. As noted in the PSR, Cullen has had steady employment his entire adult life. PSR ¶ 13-14, 96 He also paid the majority of the restitution to the victim company prior to any criminal charges being filed.

B.     The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense

The sentence imposed in this case must reflect the fact that the defendant intentionally stole from his employer monies to which he knew he was not entitled. He is an

4

intelligent individual who was capable of understanding the harmful effect of his criminal acts. He must be held accountable for his conduct, which caused economic harm to the victim company.

      C.      The need to afford adequate deterrence to criminal conduct, and <u>to protect the public from further crimes of the defendant</u>

Because Cullen readily accepted responsibility for his offense, there appears to be little need for specific deterrence. However, general deterrence is one of the prescribed goals of every sentencing, *United States v. Pugh*, 515 F.3d 1179, 1194 (11th Cir. 2008), and it occupies an important role in sentencing for financial crimes committed by professionals. Other similarly-situated individuals who abuse their position of trust should see that they will face serious repercussions for fraudulent behavior. *See United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) "(Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence.") (internal quotations omitted).

      D.      <u>The need to avoid unwarranted sentencing disparities</u>

A sentence within the guideline range will not result in unwarranted disparities.

      E.      The need to provide the defendant with educational or vocational training, <u>medical care, or other correctional treatment in the most effective manner</u>

The defendant has an advanced business degree and does not appear to require any educational or vocational training. He does not report any medical conditions that need to be addressed by the justice system.

IV.    <u>RESTITUTION</u>

Cullen agreed in his plea agreement to make restitution of $138,655.91 to the victim company. He paid $111,782.11 prior to criminal charges being initiated. He is expected to pay the remainder prior to sentencing.

V.   SUPERVISED RELEASE

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

VI.   CONCLUSION

For all the reasons stated above, the government submits that all of the appropriate considerations of sentencing favor the imposition of a sentence within the advisory guideline range of 10 to 16 months' imprisonment.

Respectfully submitted,

DAVID METCALF
United States Attorney


*s/Terri A. Marinari*
TERRI A. MARINARI
Assistant United States Attorney

6

<u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the government's sentencing memorandum has been served this date by email and electronic filing upon:

Richard J. Fuschino, Jr.

<u>*s/Terri A. Marinari*</u>
TERRI A. MARINARI
Assistant United States Attorney

Dated: July 22, 2026